UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF MISSISSIPPI

WESTERN DIVISION

JUANA GONZALEZ MORALES, et al.                                  PETITIONERS

VS.                                 CIVIL ACTION NO. 5:20-CV-181-DCB-MTP

SHAWN GILLIS, et al.                                            RESPONDENTS

ORDER

This Matter is before the Court on Petitioners' Motion for a Temporary Restraining Order. [ECF No. 2]. This Motion was filed in Petitioners' ongoing habeas matter that challenges their continued immigration detention. Petitioners allege their detention violates 28 U.S.C. § 2241. They seek an order to require Respondents (1) to conduct regular widespread testing; (2) to abide by all CDC guidelines; (3) to prohibit transfers into and out of Adams County Detention Center; and (4) to permit a health inspection of ACDC at the earliest possible date. [ECF No. 3]. Having carefully considered the parties' submissions, the record, and the applicable law, the Court finds as follows:

BACKGROUND

Petitioners filed their habeas petition alleging that their continued civil immigration detention violates their substantive due process rights under the Fifth Amendment to the United States Constitution and the right to be free from cruel and unusual punishment under the Eighth Amendment. [ECF No. 1]. They are being

1

held in Adams County Detention Center ("ACDC"). The Habeas Petition describes the four Petitioners as follows:

> **Juana Gonzalez Morales** is 37 years old and suffers from a thyroid disorder and obesity. These conditions qualify as disabilities under the Rehabilitation Act.
>
> **Abdallah Khamis** is 46 years old and suffers from Health Condition A. This condition qualifies as a disability under the Rehabilitation Act.
>
> **Dwight Mundle** is 35 years old and suffers from hypertension, high cholesterol, and psoriasis. Hypertension qualifies as a disability under the Rehabilitation Act.
>
> **Edinahi Zacarias Cabrera** is 32 years old and suffers from asthma, pre-diabetes, and an endocrine disorder. Asthma and the endocrine disorder qualify as disabilities under the Rehabilitation Act.

Id. The Petitioners have not included individual medical records. The medical history is provided by declaration they provided.

On November 4, 2020, the Court held a telephonic hearing on the Motion. For the reasons discussed below, the Motion for a Temporary Restraining Order will be denied.

COVID-19

COVID-19 has been declared a global health pandemic by the World Health Organization. See Williams v. Barr, 2020 WL 2193448, at *1 (M.D. Pa. May 6, 2020). "Humans have no immunity to the virus and, currently, there is no cure, vaccine, or known anti-viral treatment." Id. The primary method for mitigating the spread of this virus is through social distancing, i.e., breaking the chain

of transmission by staying, generally, at least six feet apart. See id.

"Most individuals who are infected develop mild or moderate respiratory symptoms and recover with no medical intervention, but in a minority of cases[,] individuals experience serious illness or death." Id. However, some populations – the elderly and those with underlying preexisting medical conditions – are more susceptible to developing serious illness or death. Id.

## Analysis

### Temporary Restraining Order

Rule 65 of the Federal Rules of Civil Procedure sets out the general procedure for injunctive relief in federal courts. If there is an adversary hearing – as there was in this case – a temporary restraining order may be treated as a preliminary injunction. Courts look to four factors when evaluating whether a temporary restraining order or preliminary injunction is appropriate.

A temporary restraining order ("TRO") is an extraordinary remedy. To prevail the party seeking a TRO must establish the following elements:  (1) a substantial likelihood of success on the merits;  (2)  a substantial threat of irreparable harm if the injunction is not granted;  (3)  the threatened injury to the movant outweighs any harm to the nonmovant that may result from the injunction; and (4) the injunction will not undermine the

public interest. Beswick v. Barr, No. 5:20-CV-98-DCB-MTP, 2020 WL 3520312 (S.D. Miss. June 29, 2020). The Fifth Circuit has repeatedly warned that "a preliminary injunction is an extraordinary remedy which should not be granted unless the party seeking it has 'clearly carried the burden of persuasion on all four requirements.'" Lake Charles Diesel, Inc. v. Gen. Motors Corp., 328 F. 3d 192, 196 (5th Cir. 2003) (citing Miss. Power & Light Co. v. United Gas Pipeline, 760 F. 2d 618, 621 (5th Cir. 1985).

Jurisdiction

The Court will initially address the Respondents' claim that the Petitioners may not seek their release from custody through a § 2241 habeas petition relying on Orellana Lluvicura v. Gillis, No. 5:20-CV-128-KS-MTP, 2020 WL 4934260 (S.D. Miss. July 17, 2020). In Orellana Lluvicura, the Court held that an ICE detainee's habeas petition was not properly before the Court because he did not "challenge[] the cause of his detention" and "merely requesting, as relief, release from custody does not convert the action into one under the habeas statute." Id. The Court respects District Judge Keith Starrett's opinion in Orellana Lluvicura; however, this Court has interpreted this situation differently in Espinoza v. Gillis. See id.; Espinoza, No. 5:20-CV-106-DCB-MTP, 2020 WL 2949779 (S.D. Miss. June 3, 2020). In Espinoza, the Court found "the requested relief, immediate release from detention, permits

4

the petitioners to proceed with their habeas petition." Id. at *2. As in Espinoza, Petitioners' requested relief is properly before the Court. Id.

Merits of Petitioners' Due Process Claims

To prevail, Petitioners must prove there is a substantial likelihood of success on the merits. Beswick, 2020 WL 3520312 at *3. "To succeed on their claim that the conditions at ACDC violate the Constitution, petitioners must demonstrate that the conditions of confinement amount to punishment of the detainee." Espinoza, 2020 WL 2949779, at *3. In making that determination, the Court must consider whether the conditions and restrictions of the detention center are rationally connected to a legitimate governmental objective. See Bell v. Wolfish, 441 U.S. 520, 539 (1979).

The Supreme Court has recognized that ensuring the presence of detainees at their immigration hearings along with the effective management of a detention facility once an individual is confined, constitutes a legitimate governmental interest. See Jennings v. Rodriguez, 138 S. Ct. 830, 836 (2018); Demore v. Kim, 538 U.S. 510, 520-22; Zadvydas v. Davis, 533 U.S. 678, 690-91 (2001).

Under the standard established in Bell, the detention must be rationally related to a legitimate government interest. Here, the Petitioners' conditions of confinement do not amount to

5

unconstitutional punishment. See, e.g., Bell, 441 U.S. 520. "First, the Supreme Court has made it clear that the Government has a legitimate interest in preventing the petitioners from absconding and avoiding removal." Espinoza, 2020 WL 2949779, at *3. "Second, the petitioners' continued confinement is reasonably related to that legitimate governmental interest as it guarantees that the petitioners will attend their deportation proceedings." Id.

   i.   Conditions of Confinement

ACDC is governed by national detention standards and is inspected regularly. [ECF No. 15-1] at 3. Petitioners seek to have a health inspection of the facility; however the facility is already regularly inspected and has passed all inspections. Id. at 4. ACDC has taken several precautions and steps to reduce the incidence of COVID-19 including reducing the number of inmates housed at the facility. Id. The facility is equipped to hold 2,300 detainees but currently houses 797. Id. The population of each housing unit is monitored daily in order to help facilitate social distancing as much as practicable. Id. at 4.  All detainees are encouraged to social distance, and in order to ensure proper distances all seating is marked to indicate where detainees should not sit. Id.

All detainees housed at ACDC on September 3, 2020, were tested that day for COVID-19. Id. at 6. When new detainees are brought to ACDC, they are tested for COVID-19 and placed in a cohort for 14 days. Id. Anyone who displays symptoms of COVID-19 is placed in a cohort with restricted movement and is monitored daily for fever and symptoms of respiratory illness. Id. In housing areas where detainees are suspected of having COVID-19, the staff entering the area wear full personal protective equipment ("PPE"). Id. Only a limited staff can enter the areas where individuals have or are suspected of having COVID-19. Id.

Additionally, ACDC has increased sanitation efforts to reduce the spread of the virus. ACDC provides hand sanitizer, disinfectant sprays and wipes, soap, gloves and masks to staff and detainees. [ECF 15-1] at 7. In multiple languages, ACDC provides educational information regarding effective efforts to slow the spread of COVID-19 to staff and detainees. Id. at 3. In addition to bleach, and in order to properly clean, ACDC uses a chemical that kills COVID-19. Id. at 6. High contact areas are cleaned frequently, with living areas being sanitized each hour. Id. at 7-8.

ACDC has suspended all non-legal visits to the facility. Id. at 8. The limited legal visits are noncontact; gloves are required, as are masks and eye protection, and all must be worn at all times. Id. Furthermore, all staff and vendors are screened for body

temperatures and travel history before they enter the facility. Id. Masks are distributed to detainees and staff three times per week. Id. at 7. ACDC also monitors its supplies to ensure that it has a sufficient supply readily available for use. Id. at 8.

Detainees transferring into ACDC represent the majority of confirmed COVID-19 cases. [ECF No. 15] at 4. To prevent an outbreak from detainees transferring in, detainees are placed in a separate housing facility so that no one in the general population is exposed. Id. As of November 16, 2020, there were only 7 confirmed cases under isolation or monitoring. See ICE, COVID-19 Guidance (last visited November 18, 2020), https://www.ice.gov/coronavirus#wcm-survey-target-id.

"The Eighth Amendment does not enact the CDC guidelines. Nor does it require [defendant] to implement 'long-term changes' or 'avoid the spread of COVID-19,' and the failure to do so does not 'clearly evince a wanton disregard for any serious medical needs.'" Valentine v. Collier, 978 F.3d 154, 164 (5th Cir. 2020) (quoting Gobert v. Caldwell, 463 F. 3d 339, 346 (5th Cir. 2006)). The conditions of confinement at ACDC do not amount to punishment under the Eighth Amendment. ACDC has taken reasonable action to mitigate the spread of COVID-19. "And 'prison officials who act reasonably cannot be found liable under the Cruel and Unusual Punishments

Clause.'" Valentine, 978 F 3d at 165 (quoting Farmer v. Brennan, 511 U.S. 825, 845, (1994)).

Irreparable Harm

Petitioners must show that they are likely to suffer irreparable harm, "harm for which there is no adequate remedy at law." Daniels Health Scis., L.L.C. v. Vascular Health Scis., L.L.C., 710 F.3d 579, 585 (5th Cir. 2013). At the hearing held on November 4, 2020, Petitioners' expert, Dr. Niyogi, was not able to say with certainty that the Petitioners (1) will suffer COVID-19, or (2) that they will get a severe case if they are infected.

In fact, Petitioner Abdallah Khamis claims to have been exposed through one of his former cellmates. [ECF No. 21-2] at 2. Khamis claims to have been exposed on September 10, 2020, and he has yet to contract the disease.

The "incidence of diseases or infections, standing alone," does not "imply unconstitutional confinement conditions, since any densely populated residence may be subject to outbreaks." Shepherd v. Dallas Cty., 591 F.3d 445, 454 (5th Cir. 2009). Instead, the plaintiff must show a denial of "basic human needs." Id. "[A] detainee . . . must demonstrate a pervasive pattern of serious deficiencies in providing for his basic human needs." Id. "Deliberate indifference is an extremely high standard to meet." Cadena v. El Paso Cty., 946 F.3d 717, 728 (5th Cir. 2020).

9

Petitioners have failed to demonstrate a pervasive pattern of serious deficiencies nor have they shown a deliberate indifference.

## Conclusion

Petitioners have failed to establish (1) a substantial likelihood of success on the merits and (2) a substantial threat of irreparable harm. Thus, they have not met the burden of proof necessary for the Court to issue a TRO. The Court recognizes the difficulty of accurately confirming the number of cases because asymptomatic carriers may not be tested. However, there is no evidence before the Court that there has been a drastic increase in cases at the facility. In fact, the decrease in cases is evidence that the procedures in place are working to mitigate the spread of the virus. ICE asserts that it is conducting tests based on CDC guidelines, and the Court will not require ACDC to provide additional testing which would exceed CDC's guidelines. See Valentine, 978 F.3d 154.

Accordingly,

IT IS HEREBY ORDERED that the Petitioners' Motion for a Temporary Restraining Order [ECF No. 2] is DENIED.

SO ORDERED this the 23rd day of November, 2020.

/s/David Bramlette

UNITED STATES DISTRICT JUDGE